Good morning, Your Honors, and may it please the Court, Counsel, Steve Roberts on behalf of Defendant Appellant Darren McQueen. Your Honors, I would like to reserve two minutes for rebuttal. All right. Your Honors, Mr. McQueen pled guilty to a single count of distribution of oxycodone hydrochloride. That was about 60, or excuse me, 76 pills. The District Court then rejected the party's Rule C-1C plea agreement, and on July 21, 2014, Mr. McQueen was sentenced to an above-guideline sentence of 180 months. The applicable guideline that the District Court used, although somewhat convoluted because Mr. McQueen was sentenced during the drugs minus two amendment before it was imposed, but the District Court found the guideline range with an adjusted offense level of 21 and a criminal history category of 6 was 77 to 96 months, and that was after an upward departure from criminal history category 4 to 6, and then the District Court also imposed an upward variance, and ultimately the 180 months followed by five years of supervised release. The issue in this case, Your Honors, is whether Mr. McQueen's sentence, 15-year sentence, was reasonable. It's our position . . . Well, you've really made two, I think, challenges. One is procedural, and the other is substantive, correct? That's correct, Your Honor. Since this is a . . . let's talk about the departure first. Is a departure reviewed for procedural correctness? Your Honor, I believe whether it's procedural or substantive, they're both reviewed for reasonableness. Well, just a minute. If we've got a procedural correctness problem, we've got a totally different analysis than we would have in a substantive problem, and this is a departure, and I thought that Vasquez-Cruz says that we do not review departures for procedural correctness. Your Honor, it's correct. I'm not familiar with that case, but I'm not going to quibble with the Court on that point. I think the issue with the departure in this case is, what was the finding that the District Court used to increase the criminal history category? But if you're really talking about substantive problems, I can get to that, but that has to do with variance. I guess what I'm really talking about is, on a departure, as I read the case law, an erroneous application of the departure would be harmless so long as the sentence actually imposed was substantively reasonable. So I would then look at the second problem. So, again, I'm wondering where it is that I'm going to review this for procedural error. Your Honor, I think that, if I understand the Court's question correctly, if the Court finds there is no procedural error, the sentence would still be reviewed for reasonableness, and I think we can agree on that. And the reason that the procedural error was not reasonable goes back to what the Court found. And I think the finding that the Court made was that the defendant's life had been one of drugs, guns, and violence. And because the District Court took that into account to both increase the criminal history category under 4A1.3 and also to vary upward from the guidelines, that's our issue in the case, Your Honor. And I would submit to the Court that that double-dipping, in terms of using the finding that it did to increase both the departure and both the variance, that's where the sentence comes in as procedurally unreasonable. And let's get specific as to what exactly the Court found. The Court based its finding for criminal history, increase in the criminal history departure, on a pattern of ongoing arrests. And that can be seen in the record at 127, 152, 156, and 160. Specifically during sentencing, when Defense Counsel queried the Court, the Court said, well, it's my finding. Well, but it seemed to me the record's pretty clear that he did not consider arrests for the purposes of the departure. Your Honor, that's what the Court said, although it's clear that the Court felt from the inception of the case, before we even got to sentencing, that Mr. McQueen was a career offender, de facto. And that's what the Court said, that he thought he may not be, but in fact he is. But I guess the fact, you got some issues here, which I started to look at. If it's not a departure, if I'm not going to review the departure for procedural correctness, which is what our case law requires, which is a little bit of a difference than what other case law requires, I admit, that's in the Ninth Circuit only. Then I get to, okay, why 5 and not 6? Well, the Court said, why 5 and not 6? And I got no case that says it's got to be 5 first and not 6. I got nothing that says that. Then I say, well, maybe he considered his arrests. Well, he didn't consider them. He says he didn't consider them. Absolute. Didn't give notice. Shoot, you had a chance to brief it. I don't see how the notice is there. So again, I'm on procedural correctness here. And as to the procedural correctness, I just don't know what the judge did not follow that our case law suggests. Now, I'm not saying I agree, but I'm just saying there is a procedure that must be followed, and this is what he did, knowing full well what we had to say. So what is there to say about it? Your Honor, I think that there's a lot to say, and I think that transitions into the actual substantive reasonableness of the sentence, which even if the Court finds no procedural error, then the sentence of 180 months was substantively unreasonable. And the reason is, if we look at the totality of the circumstances of Mr. McQueen's case, what we had was a scope of limited distribution of oxycodone hydrochloride. It was limited in scope from July of 2013 to February of 2014 when Mr. McQueen was arrested. There were no guns involved. Also, the reason that the parties had negotiated the range that they had, which was 50 to 70, I would ask the Court to take note of that, is because the government was able to keep its confidential source in the field and continue working. And that was the reason, because Mr. McQueen had pled guilty, filed no pretrial motions, and the CI was preserved that the parties had agreed to the 57 to 70 range. You would agree with me when we get to substantive unreasonableness, we're really talking about abuse of discretion, are we not? That is the standard, Your Honor, abuse of discretion. A sentence outside the guidelines can't be presumed to be unreasonable. That's correct also, Your Honor. So then I have to look at what did the Court do? Your Honor. He said, the criminal record is among the worst the Court has ever seen. He said, life has been one of drug distribution, possession of firearms, and everything that goes with that, including the danger to others. I could go on with the little phrases that he used to give some justification for his discretion. Your Honor, with all due respect to the District Court, it wouldn't be the first time that a District Court used hyperbole to discuss someone's criminal history. If you actually look at Mr. McQueen's criminal history, he had 13 adult convictions. Seven of them were for misdemeanor offenses, driving and DUI-related offenses. The District Court did not talk about the staleness of the arrests that it took into account. I mean, a lot of the things we were talking about were from the 1990s, the early 1990s. And specifically, and this is probably my most important point that I haven't gotten to yet, is the District Court did not consider the unwarranted sentencing disparities that would be created by sentencing Mr. McQueen to 180 months. From the defense counsel's perspective and from the government's perspective, this was a run-of-the-mill drug case. And we only had six buys with the CIA in a limited amount of time. The District Court abused its discretion by paying lip service to the guidelines. That point was explicitly recognized in United States v. Gall. And as a result, an unwarranted sentencing disparity resulted. The District Court did not take that into account. And it's Mr. McQueen's position that the extent of the deviation was too great. And we would ask the Court to reverse and remand on those bases. Thank you. May it please the Court, Counsel. I'm James Gakie. I represent the United States in this manner. I would agree with Judge Smith. In this post-Booker, post-Gall world, the procedural question, and not to be flippant, but we breeze right through the procedural issues. Vasquez is controlling here. How the Court reached the departure is really not subject to the Court's review in this instance. And even if it were... So basically, in your view, we blow by Rule 32 notice. Let's just assume there wasn't appropriate notice. It just evaporates in your view. I guess I would agree that Rule 32 notice is important in the sense of if the Court is going to depart, the defendant should have notice of that. In this instance, the Court was explicit about that. And the Court had briefing. The Court had two hearings before the sentencing hearing. And the Court was explicit in the July 2nd and the July 7th hearings. I want the parties... You're not saying that if there was no notice, that it would somehow Rule 32 would just go out the window. But you're saying there was notice here. Next issue. Absolutely, Your Honor. That's exactly what I'm saying. I think it's a matter of equity. The defendant should have notice if the Court's going to go way beyond anything that's been contemplated by the parties or contemplated by the PSR. But in this situation, we have notice simply by the virtue of the PSR. It says, you're a career offender. And the issue of the career offender issue, while the Government agrees with the Court's ultimate... That's where we got into the variance, not the departure, however. That's right, Your Honor. We're talking about criminal history is the departure. Criminal history is the departure. The variance is the substantive sentence. The variance to you're essentially... You're essentially a career offender. A career offender. But I will note... Not technically, but... Not technically, but in practice, your life is one of a career offender. Not the loaded term of the guidelines. But I will say that that question as to whether this defendant was a career offender was very close. And it was close not just for the reasons related in the King case, but also as the District Court noted in the July 2nd and July 7th hearings, the defendant was almost a career offender by virtue of an entirely other conviction that happened to be, depending on how you calculate it, one to six months outside the window. That's very close. So the question as to whether this defendant was a career offender is not so cut and dry. He was very close to being a career offender. So it's not somebody who is a non-violent, run-of-the-mill drug dealer. This is a defendant who was a whisper away from being a career offender for several different reasons that the Court provided notice to the parties on. So how do you respond to the opposing counsel's argument that he considered the same things for both the departure and for the substantively unreasonable sentence? The Court nailed this issue, Your Honor, when you said the Court was very clear with regard to the issue of the history of arrests. And I think that's the issue that counsel focuses on. The Court said in writing, and at the sentencing hearing orally, I'm not focusing on the arrest issues for the guideline calculation. The Court, I mean, under Gall, this is really about Gall. Did the Court comply with what Gall requires? And Gall requires that this Court have an adequate record to review the Court's exercise of its discretion, review it on an abuse of discretion standard, to have a variance, and this point of variance significantly up from the guideline calculation. And this record is replete with the Court's reasoning, both a long oral colloquy at sentencing and briefing that tipped the Court's hand to that well ahead of time, several hearings prior to the sentencing, and then a post-sentencing clarifying memo explaining the Court's reasoning. So this Court has an ample record to review how the Court exercises its discretion, and in the government's view, it exercises its discretion based on an abuse of discretion standard perfectly appropriately. It laid out a very lengthy record as to why that district court felt that this defendant should be sentenced in a much higher sentence than the guideline calculation called for. And while the government recommended it, yes, the government did recommend a lower sentence, and it had its reasons to do so. But in this, in our system, it's the judge's, trial judge's determination that matters, and his determination was consistent with what is required by Gall and this Court's precedent. Thank you. We used up a lot of your time. I'm going to give you an extra minute for your rebuttal here. Thank you, Your Honor. Your Honor, in rebuttal, Mr. McQueen would point out that the reason that the finding and the double counting based on criminal history and the upward variance is prejudicial because Mr. McQueen spent a lot of time defending against the career offender issue, and he had notice as to that. But he did not have the opportunity to change the Court's mind regarding the finding. Had Mr. McQueen known about what the Court's finding was, and the Court wouldn't even state what it was on the record, then perhaps he could have convinced the district court to come to a different conclusion and stay within the guideline range of 77 to 96 months. In terms of the career offender issue, which opposing counsel spoke about, that is a technical issue. The double counting that I've been arguing is a separate issue, and I would point that out to the Court. The reason that we're asking for a remand in this case is so that the district court can make an adequate record because right now it's Mr. McQueen's position that the record regarding the Court's finding is inadequate. And for all of the reasons that I've stated previously, I would ask the Court to reverse and remand Mr. McQueen's sentence. Thank you. Thank you. Thanks to both of you for coming over from Spokane this morning. The case of United States v. McQueen is now submitted and we're adjourned for the morning.
judges: McKeown, Gould, Smith